### MARY HODGES v. JOSEPHINE HODGES.

Decided December 11, 1901.

**1.—Fraudulent Conveyance—Husband and Wife.**

Where defendant, understanding that she was lawfully married to her supposed husband, was induced to convey to him, without consideration, one-half her lot on which they resided as husband and wife, and the husband was at that time married to plaintiff, and afterwards conveyed such one-half of the lot to plaintiff, without consideration, the court was justified in finding that the husband compelled defendant to execute the conveyance to him by fraud, threats, and intimidation, and because she thought he was her husband.

**2.—Same—Limitations—Fraud—Cancellation of Deed.**

Limitations did not begin to run against defendant's right to have her deed to the husband canceled until she discovered the fraud he had practiced on her in pretending to be a single man at the time of their marriage.

**3.—Same—Finding of Fact.**

See evidence held to warrant a finding that none of the husband's money went to pay for improvements placed on the land conveyed to him by defendant.

Error from Bexar. Tried below before Hon. S. J. Brooks.

*James Raley,* for plaintiff in error.

*Thomas O. Murphy,* for defendant in error.

JAMES, CHIEF JUSTICE.—The only statement of the evidence is in the conclusions of fact filed by the trial court.

The material facts are that Lyman Hodges married appellee, Josephine, in San Antonio in 1885. He fraudulently represented himself as a single man, but had a wife in Michigan (appellant) whom he had deserted. Appellee did not know of this fact until after his death in 1899.

The suit is by appellant for the south half of lot 4, block 5, on North Pecos street, in San Antonio. The lot 4 was bought with Josephine's money. On July 29, 1885, she and Lyman Hodges, as man and wife, executed to Juan Barrera a deed to the undivided half of said lot,

with the understanding that he would deed it at once to Hodges, which was done on the same day. There was no consideration for either deed, and the court says in its findings that "Hodges by fraud, threats, and intimidation, and because she thought he was her husband, compelled her to join him in executing the deed."

On August 18th, same year, they as man and wife entered into a contract with a building and loan association by which a house was erected on the north half of said lot, they obligating themselves to pay $1000 therefor, with 12 per cent interest, in monthly payments of $8.78, giving à lien on the lot. On July 21, 1891, they executed a deed of partition, by which she conveyed to him the south half of the lot, with house thereon, and he conveyed to her the north half with the house. With respect to this deed the court made the same finding as to fraud, threats, etc. This partition deed is set forth in extenso. It recites that they were desirous of partitioning their property so that each might thereafter manage, control, and dispose of his or her part without the approval of the other; and he releases and relinquishes to her, the north half with improvements, and she in consideration of the assumption by Lyman S. Hodges, her husband, of the payment of twenty-eight notes held by said association, secured by a lien on the lot, released and relinquished to him the south half with improvements. It was a further agreement, expressed in the instrument, that the rents derived from the place on the north half of the property were "to be applied as usual until the indebtedness hereinbefore referred to has been canceled."

The north half was rented continuously for $15 a month until the death of Hodges, in 1897. He paid off the notes to the association. Besides these rents, he received $14 a month pension and at one time got $800 for back pay or bounty. The court did not in terms find that the notes were paid out of the rents of the north half of the property, nor how they were paid. It found that it was not proved that any of his money was invested in the place.

Plaintiff, in January, 1889, obtained a divorce from Hodges in the courts of Michigan. On December 11, 1897, he conveyed the south half of the lot to plaintiff, without consideration, reserving to himself for like the use thereof. He died in 1899 on the south half of the lot where he was living with defendant, as her husband up to that time.

The first assignment is that "the court erred in canceling the deeds introduced, because it was proven that the right to have them canceled for fraud and duress was barred by limitation."

Appellant's idea is that, if duress was used in obtaining the deeds, this was something which she must have known at the time they were made, and even if she had been his wife, her right to cancel them upon that ground was barred. The findings of the trial court we must accept as fully proved, not knowing the testimony from which they were derived. The finding is that both deeds respectively were procured "by fraud, threats, and intimidation, and because she thought he was her husband." What the particular fraud was to which the court had ref-

erence is not specified, but, as the findings speak of fraud in Hodges' representing himself as unmarried, when he married defendant, and as to her not discovering this fraud until after his death, we take it that the finding referred to the continuing deception, which kept her in the belief that they were lawfully married. The finding we construe to mean that this fraud entered into and induced the execution of the instruments, and was at the bottom of the transactions.

Mr. Bigelow in his work on Fraud, volume 1, page 554, states the rule in this connection: "In case the marriage in question was absolutely void,—as where one of the parties was lawfully married at the time,—an action for damages for fraudulent misrepresentations, successfully made for the purpose of effecting the marriage, is maintainable; and all contracts effected under the same influence, so far as the rights of innocent third persons have not intervened, could no doubt be set aside in favor of the injured party. And where a devise or legacy has been given to one as husband or wife of the testator, who was not such, under downright deception in regard to the relation of the parties, the gift will be invalid; though it would, perhaps, be otherwise if the gift was made from other motives than those furnished by the supposed marriage relation and independently of that, as clearly it would if there was no fraud on the part of the devisee or legatee."

The statute of limitations did not begin to run against her until she discovered this fraud. This disposes of the first and second assignments.

As to the third assignment, we say that the findings tend to show that the building and loan association was paid out of the rents of the north half of the property. The entire lot was the individual property of defendant. The deed of partition itself indicates by its recitals that there were then only twenty-eight of the notes remaining, that these rents had been used to pay the notes, and that thereafter they were to be so applied. This north half of the lot was defendant's property, including the improvements, subject, however, in equity, to whatever claim there was for money of Hodges that may have been invested in the improvements. The strong inference from what is found in the court's statement is that the house was paid for by its own revenues, and that none of Hodges' money went into it.

What has been said disposes of all the other assignments.

*Affirmed.*

Writ of error refused.