## H. A. PITMAN ET AL. v. LYDIA R. HOLMES.

### Decided February 10. 1904.

**1.—Fraud—Concealment.**

Where one party has prevented another from coming to the knowledge of his rights he can not avail himself of the statute of limitation; and where a special relation of trust and confidence (as parent and child) exists and one party, having knowledge of material facts, contracts with another without disclosing such knowledge, the mere silence, under the circumstances, becomes fraudulent concealment.

**2.—Interest in Land—Partition—Limitation.**

Plaintiff, not knowing the extent of her interest in real property and having been induced by her mother to believe that the property was bought with community funds of her mother and her deceased father, instead of the separate funds of the father and that her interest was only one-half, could not be bound by a partition of the land made on that basis. Limitation did not commence to run against her until she knew or was charged with the knowledge of her interest and of the facts showing that her mother had repudiated the trust, and the evidence, which is here considered, did not tax her with such knowledge.

**3.—Limitation—Charge.**

Where limitation under the four years statute was submitted to the jury and decided against defendant on issues which equally disposed of his plea of limitation under the five years statute, a refusal to submit the latter was no error.

**4.—Impeachment of Witness.**

That a witness does not remember having made statements out of court contradictory to his testimony will not prevent the admission of his contradictory statements.

**5.—Contradicting One's Own Witness.**

The rule that a party will not be permitted to impeach his own witness does not preclude him from proving the truth of any particular fact by other competent testimony in direct contradiction to what the witness may have testified.

**6.—Newly Discovered Evidence.**

An order to obtain a new trial on the ground of newly discovered evidence it must be shown that the knowledge of the existence of the new evidence was acquired subsequent to the former trial, and that it is not due to a want of diligence that it was not discovered in time to be used at the first trial; that such evidence is material, and not merely cumulative, and, if admitted, would probably change the result upon another trial.

Error from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*H. B. Salliway* and *Ed. Haltom,* for plaintiffs in error.

*Bell & McAskill,* for defendant in error.

NEILL, ASSOCIATE JUSTICE.—Defendant in error, plaintiff below, on the 23d day of January, 1902, exhibited her original petition in the District Court against plaintiffs in error, Hester A. Pitman and her husband C. R. Pitman, defendants below, praying for a cancellation of a certain partition of lands evidenced by the deeds of the respective parties made between them on the 21st day of October, 1884.

In the first amended petition, on which the case was tried, it is alleged in substance that on the 1st day of January, 1871, plaintiff's

father, T. J. Vivian, died intestate, leaving defendant, Hester A. Vivian, now Pitman, his wife, and plaintiff, then an infant two months old, surviving him as his only heirs, and that there never was any administration upon the estate nor partition of the property save such as is by this suit sought to be set aside.

That at the time of his death Vivian resided in Bexar County and owned personal property consisting of money, cattle and horses of the value of $12,000, all of which was acquired before his marriage to Hester A., and was at the date of his death his separate estate.

That when plaintiff was two years old her mother, Hester A., married her codefendant, C. R. Pitman, and that from then plaintiff resided with them until she was married on the 17th day of July, 1884, in her thirteenth year, to one J. L. Johnson.

That upon the death of her father, her mother took possession of his money, horses and cattle, assumed absolute control thereof, used, managed and invested the same as she saw fit. That on the 13th day of May, 1873, her mother invested $2500 of T. J. Vivian's money in a tract of 850 acres of land situated in Bexar County, Texas, which she purchased for that sum from Samuel Hutton. The land is particularly described in plaintiff's petition. That by reason of the fact the land was purchased with money of the separate estate of her father, plaintiff became the owner of an undivided two-thirds interest in the same, and her mother to the remaining one-third interest. That afterwards on the 9th day of July, 1872, the defendant, Hester A. Pitman, then Vivian, in violation of plaintiff's rights in said lands, made a pretended sale of about 200 acres thereof to her father Robert Adams. The land thus alleged to have been conveyed to him is also specifically described in plaintiff's petition.

That on the 21st day of October, 1884, a short time after plaintiff's marriage to J. L. Johnson, and while she was a mere child, of immature judgment, with no business experience, still under the influence of her parents, incapable of guarding and protecting herself against their misrepresentations and fraud, she and her husband entered into a partition agreement with defendants, by the terms of which she received from them a deed to about one-half of the 638 acres of land retained by her mother after her conveyance of 200 acres out of the 850 acres originally purchased, to Adams; that is to say, they conveyed her 319 acres, specifically described by metes and bounds. And at the same time and in the same manner plaintiff and her then husband conveyed to defendants all their right, title and interest in the other one-half of said land, the quantity of land conveyed being 319 acres, which is specifically described in the deed and such description set out in her petition.

That at the time of said partition and execution of the partition deeds defendants knew said lands had been purchased with the money belonging to the separate estate of plaintiff's father, acquired by him prior to his marriage to her mother, but that plaintiff had no knowledge

of such fact and did not know of it until many years thereafter; that for the purpose of cheating and defrauding plaintiff defendants fraudulently concealed such fact from her, and for the purpose of inducing plaintiff to make said partition and to accept one-half of the 638 acres as her share falsely and fraudulently represented to her that said lands were purchased by defendant Hester A Pitman, while Hester Vivian, with the money belonging to the community estate of herself and deceased husband, and that in consequence it was community property, and that plaintiff was entitled to but one-half of the property. That with full faith and childish confidence in said representations of her parents, and relying thereon, plaintiff executed said deed believing, as defendants stated, that said land was purchased with community funds and not with the separate funds of her deceased father, and so believing she accepted the deed to the 319 acres of land as her share of the 638-acre tract.

That in 1885 her husband, J. L. Johnson, died and plaintiff again became an inmate of her mother's household, where she continued to reside until the 19th day of December, 1885, when she married Solomon Holmes and moved with him from Bexar County far away from her relations and relatives of her father and did not return until 1901, when for the first time she discovered that defendants had practiced the fraud upon her in the partition of said lands. Then she learned for the first time that the lands had been purchased and paid for with money acquired by her father previous to his marriage with her mother and discovered that defendants' statements and representations made at the time of the partition and on divers occasions prior thereto were wholly false and fraudulent.

Plaintiff prayed that her deed to defendants be annulled and canceled and that she have judgment out of the 319 acres held by defendants for such additional number of acres as would give her two-thirds of the 638 acres, and for possession of that portion of same as the court may ascertain and declare to be her property.

By the trial amendment plaintiff alleged that she had no means of discerning the deceit and fraud complained of in her first amended original petition, as the facts therein alleged were known to her mother and Robert Adams and her father's relations who knew of her father's having separate means; that defendant and Robert Adams did not tell her the facts but informed her of the matter as alleged in her first amended petition; that she did not live near her father's relatives, was not acquainted with them, had no means of communicating with them, and had no reason to suppose that they knew anything beneficial to her, nor did she have any reason to think or believe that any one else had any information that would be beneficial to her in the matter, but placed implicit trust in her mother's representations that the same was community property; that there was no record to acquaint her of the money and property left by her father and she had no means of discovering the fraud perpetrated upon her, nor reason to suspect the same,

nor notice and information of such knowledge on the part of anybody or reason to suspect anybody knew of such facts, and that she knew of no facts or circumstances calculated to put an ordinarily prudent person upon inquiry as to the existence of the true state of facts in regard to the purchase of the land with her father's separate property.

The defendants answered by general and special exceptions, a general denial, and pleas of the several statutes of limitations.

The case was tried before a jury and resulted in a verdict and judgment in favor of plaintiff, from which defendants prosecute this writ of error.

*Conclusions of Fact.*—As no assignment of error calls in question the sufficiency of the evidence to support the verdict, we deem it unnecessary to summarize and discuss the evidence, or do more than state that, from a careful examination and consideration of it, we have concluded this it is reasonably sufficient to sustain the verdict upon every material allegation in plaintiff's petition.

*Conclusions of Law.*—1. It is contended by defendants under their second and third assignments of error that the allegations of plaintiff are not sufficient to prevent the statute of limitations from running against her cause of action from the time the partition sought to be annulled was made between the parties; and that, therefore, plaintiff's petition shows upon its face that her action was barred when this suit was instituted.

It is elementary that when a party by his own fraud has prevented the other party from coming to a knowledge of his rights, he can not, in good conscience, avail himself of the statute, if the fraud was concealed from the plaintiff by the defendant, or was of such a character as necessarily implied concealment. Wood on Lim., secs. 58, 276. There may be such relations between the parties that silence, or the nondisclosure of a material fact, will be a fraudulent concealment. If a person standing in a special relation of trust and confidence to another has information concerning property and contracts with the other, and does not disclose his exclusive knowledge, the contract may be avoided. Mere silence, under such circumstances, becomes fraudulent concealment. Among the relations to which this rule applies is that of parent and child. If any of the parties standing in such relation propose to contract with persons to whom they occupy a position of trust and confidence they must use the utmost good faith. It is not enough that they do not affirmatively misrepresent; *they must not conceal; they must speak, and speak fully to* every material fact known to them or the contract will not be allowed to stand. Perry on Trusts, 5 ed., sec. 178. When such a fraud is unknown to the injured party, or is concealed, lapse of time will not be laches which bars relief (Perry on Trusts, sec. 230), and the statute of limitation will not begin to run until the fraud is or ought to be discovered. West v. Clark, 28

Texas Civ. App., 1, 66 S. W. Rep., 215; Hodges v. Hodges, 27 Texas Civ. App., 537, 66 S. W. Rep., 239. But it is the settled rule in this State that fraud will only prevent the running of the statute of limitations until the fraud is discovered, or by the use of reasonable diligence might have been discovered. Vodrie v. Tynan, 57 S. W. Rep., 680; Munson v. Hallowell, 26 Texas, 475; Anding v. Perkins, 29 Texas, 348; Bremond v. McLean, 45 Texas, 10; Kuhlman v. Baker, 50 Texas, 630; Ransome v. Bearden, 50 Texas, 119; Alston v. Richardson, 51 Texas, 1; Kennedy v. Baker, 59 Texas, 150; Brown's Heirs v. Brown, 61 Texas, 45; Calhoun v. Burton, 64 Texas, 510; Bass v. James, 83 Texas, 110, 18 S. W. Rep., 336. Where a person has a right in property, he is held, when the avenues of information are open to him, to reasonable diligence in the conduct of his affairs; and if, by the use of such diligence, he would have known of his right, he is held to have known it. And limitations will run against him from the time he should have made discovery by the exercise of ordinary diligence. Gerfers v. Mecke, 28 Texas Civ. App., 269, 67 S. W. Rep., 144.

The principles announced and authorities cited indicate the rule and pleading in cases where fraudulent concealment is relied upon to take the action of him who seeks relief against fraud from the operation of the statute of limitations. The ordinary rule is, that in order that it may appear that reasonable diligence has been exercised by plaintiff, or that he has been guilty of no laches, to discover, or in failing to discover, the fraud, he must allege the fact upon which he relies, so the court may determine from the pleadings whether he is entitled to the relief sought, assuming such allegations are true. If from such allegations the court can say as a matter of law that by the exercise of reasonable diligence plaintiff could have discovered such fraud within such time as his action would have been barred when the suit was filed, then his petition would be subject to such exceptions as are urged against the plaintiffs by the assignments of error now under consideration. If, on the other hand, the court can not so say from the allegations, the question is one of fact and must be submitted to the jury.

It can not, in view of the facts alleged by the plaintiff in this case, be said as a matter of law that she, by the exercise of reasonable diligence, could have discovered prior to the four years next preceding the institution of this suit the fact that the land was purchased with the funds of her father's separate estate. She was a baby when the money was invested; the presumption that the money on hand when her father died was community property was strengthened by what her mother told her about it being invested in the land; though married, she was under 14 years of age and prohibited by law from marrying (Rev. Stats. of 1879, art. 2839) when the land was partitioned between her and her mother; she was informed by her mother and grandfather that the land was community property; it was the duty of her mother to tell her the truth; she had the right to believe, and did believe she had been told the truth; she was in possession of no information and had no means of

acquiring such knowledge as would lead her to suspect that her mother had misrepresented the facts in regard to the land; no inventory had been filed, nor record made of her father's separate property to put her upon notice or inquiry, as in the case of Gerfers v. Mecke, supra.

Under the facts alleged as well as proved, the land having been bought with the money of her father's separate estate and the deed being taken in the name of her mother, plaintiff was the equitable owner of two-thirds of it, her mother holding the legal title in trust for her, and not knowing the extent of her interest at the time, and having been induced by her trustee to believe such interest was only one-half and having no reason to disbelieve her mother, she could not be bound by the partition, but her mother would still be charged as the trustee of plaintiff for her remaining interest in the land. And limitations would not commence to run against her until she knew or was charged with the knowledge of her interest, and of the facts showing her mother had repudiated the trust.

2. Upon the question of limitations the court instructed the jury as follows: "On the defense of limitation you are instructed that as more than four years elapsed from the making of the partition deeds between the plaintiff and defendants the plaintiff's cause of action is barred by limitation, and you are instructed to find for defendants on said plea, unless you believe from the evidence that the defendants or either of them fraudulently concealed from plaintiff that the money with which the Hutton land was bought, or a part of it, belonged to her father T. J. Vivian at the time of his marriage or was derived from property belonging to him at said time, if you find it was, and that she did not know said fact and could not have discovered the same by the use of reasonable diligence. If you believe from the evidence that defendants or either of them fraudulently concealed the fact that the money which was paid for the Hutton land or a part of it belonged to T. J. Vivian at the time of his marriage or was derived from the sale of property belonging to him at said date, if you find it was, and that plaintiff did not know said fact and could not have discovered the same by the use of reasonable diligence more than four years prior to the date of the filing of this suit, to wit, January 23, 1902, then the plaintiff would not be barred by said four years statute of limitation." The four years statute is the one applicable to actions of this character (Watson v. Texas & P. Ry. Co., 73 S. W. Rep., 830; Cetti v. Dunman, 26 Texas Civ. App., 433, 64 S. W. Rep., 787; Heidenheimer v. Loring, 6 Texas Civ. App., 560, 26 S. W. Rep., 99), and the court having submitted the issue of limitation under it, no error was committed in refusing to give at defendant's request a charge on the five years statute. If plaintiff's action was not barred by the four years statute, it could not possibly be barred by the one of five.

3. The charge of the court upon the statute of limitations, when taken in connection with the preceding paragraphs, is not obnoxious to the objection urged in the seventh assignment of error.

4. There is no merit in the eighth assignment of error. That a witness does not remember having made statement out of court contradictory to his testimony, will not prevent the admission of his contradictory statements. Johnson v. Brown, 51 Texas, 65. It is not shown by the bill of exceptions taken to the court's action in refusing the motion to exclude the testimony of the witness Beck whether such testimony was contradictory to that of witness Adams, sought to be impeached by it, or not. If the statement made by Adams as testified to by Beck contradicted the latter's evidence introduced by the defendants, a proper predicate having been laid for its introduction, Beck's testimony was admissible. If the statement made to Beck was not contrary to Adams' testimony given for defendants, but in consonance with it, defendant's were not prejudiced by the court's failure to exclude it on their motion.

5. The rule that a party will not be permitted to impeach the general reputation of his own witnesses for truth, or to impugn their credibility by general evidence, tending to show them unworthy of belief, does not preclude the party from proving the truth of any particular fact, by any other competent testimony in direct contradiction to what the witness may have testified. Greenl. on Ev., sec. 443. Hence it was not error to permit the plaintiff to testify, contrary to the testimony of the witness Burton, that said witness never told her anything about her father's property or money.

8. The remaining assignment of error complains of the court's refusal to grant a new trial upon the ground of newly discovered evidence. When a new trial is applied for on this ground, it is necessary to show that a knowledge of the existence of the new evidence was acquired subsequent to the former trial, and that it was not owing to the want of diligence that it was not discovered and obtained in time to be used when the case was tried; that the evidence is material and not merely cumulative, and, if admitted, would probably change the result upon another trial. Such a motion is addressed to the sound discretion of the trial court, and unless it appears that such discretion has been abused in overruling the motion, the action of the trial court is not subject to review on appeal. San Antonio & A. P. Ry. Co. v. Moore, 31 Texas Civ. App., 371, 72 S. W. Rep., 226.

When the motion, with the affidavits attached thereto, is considered in connection with plaintiff's sworn answer thereto, as well as with the evidence, we do not believe it comes within the principle which entitles it to be granted, or that the trial court in refusing it abused its discretion.

There is no error assigned which entitles defendants to a reversal of the judgment appealed from and it is affirmed.

*Affirmed.*