MARTINEZ et al. v. GUTIERREZ'S HEIRS. (No. 5382.) †

(Court of Civil Appeals of Texas. San Antonio. Jan. 6, 1915. Rehearing Denied Jan. 27, 1915.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT.

An assignment of error will not be reviewed where it is not followed by an adequate statement to show the matters about which complaint is made, and where what purports to be a proposition under the assignment is mere argument.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. APPEAL AND ERROR (§ 728*)—ASSIGNMENTS OF ERROR—ADMISSION OF EVIDENCE.

An assignment of error relating to the admission of evidence will not be considered, where it does not clearly show whether the evidence was objected to because of the substance thereof, or because it was apparent from the record that the cause of action was barred by limitations, and the statement following the proposition did not set forth the evidence bearing on the objection, but merely copied the bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

3. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—ISSUES.

In an action against an administrator and his bondsmen for conversion of assets, submission of an issue as to the number per head and kind of cows, bulls, and heifers that intestate died possessed of, and their value, was not prejudicial on the ground that defendant's liability was limited to the property that came into his possession, where it was expressly so limited by other issues submitted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

4. APPEAL AND ERROR (§ 724*)—ASSIGNMENTS OF ERROR—REFERENCE TO TRANSCRIPT.

An assignment of error merely referring to a page of the transcript for a certain paragraph of appellants' motion for a new trial to disclose the errors complained of will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022; Dec. Dig. § 724.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT—PROPOSITION.

An assignment of error complained of the charge on the statute of limitations because it was claimed that there was nothing in the evidence to show that plaintiffs could not have brought the suit within four years after the cause of action accrued. The proposition recited that the cause of action of every one of the plaintiffs who had passed his twenty-fifth year when the suit was filed was barred by the four-year statute, and the statement declared that the limitation was pleaded by all the defendants, and that various excuses were given for not bringing the suit sooner; no statement, however, having been made as to the facts which would show that the plea of limitation was good. Held, that the statement was not germane either to the assignment or proposition thereunder, and hence the assignment would not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. LIMITATION OF ACTIONS (§ 100*)—FRAUD.

In case of fraud, limitations will not run until discovery of the fraud, or until, by the use of reasonable diligence, it could have been discovered.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

7. EXECUTORS AND ADMINISTRATORS (§ 537*)—CONVERSION OF ASSETS—ACTION ON BOND—LIMITATIONS.

As against an administrator's sureties, limitations against an action by heirs to recover for an alleged conversion of the assets by the administrator began to run as against such heirs as were of legal age, from the time of the administrator's discharge by the probate court, and was not barred in four years thereafter by Rev. St. 1911, art. 5689, declaring that all suits on the bond of any executor, administrator, or guardian shall be commenced and prosecuted within four years next after the death, resignation, removal, or discharge of such administrator, etc.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. § 537.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error pending in Supreme Court.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by the heirs of Blas Ma. Gutierrez against Eudoxio Martinez and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered in part and reformed and affirmed in part.

A. Winslow, of Laredo, for appellants. Greer & Hamilton, of Laredo, for appellees.

CARL, J. Trinidad Martinez, joined by her husband, Fernando Martinez, Isabel Gutierrez, a feme sole, Maria S. Gutierrez, a feme sole, Dolores Gutierrez, a feme sole, Maria del Refugio Gutierrez, a feme sole, Vicente Gutierrez, Jose Gutierrez, and Amado Gutierrez, heirs of Blas Maria Gutierrez, brought this suit against Eudoxio Martinez (as former administrator of the Blas Ma. Gutierrez estate), and his bondsmen, Proceso Martinez and Manuel C. Garcia, appellants. Tomasa Gutierrez, wife of Eudoxio Martinez, is also a daughter of Blas Ma. Gutierrez, but she was not a party to the suit.

Blas Ma. Gutierrez died intestate on the 1st day of May 1898, and Eudoxio Martinez, his son-in-law, took out letters of administration on his estate in Zapata county, where he lived, and where the estate was situated, first as a temporary, and then as a permanent, administrator, and gave bond in the sum of $5,000. Proceso Martinez and Manuel C. Garcia were sureties on the bond. The appraisement was filed June 3, 1898, showing an aggregate valuation in property, including land, in the sum of $7,215.75. Eudoxio Martinez filed his final account on April 3, 1906, and was discharged.

The petition charges that Martinez was appointed temporary administrator and his bond fixed at $1,000 upon false representations that the estate was of small value, when, in fact, it was of the reasonable value of $23,000; that subsequent thereto he was appointed permanent administrator upon his false and fraudulent representations and showing that said estate, including realty, did not amount to more than $7,215.75, and upon such representations and false and fraudulent showing was placed under a $5,000 bond, which he gave with his codefendants as sureties. The petition further charges:

"That the said administrator reported the following as constituting the separate property of said deceased Blas Maria Gutierrez, to wit: 593 acres of land with river front in Zapata county, and 5,542 acres on the rear of said tract. That he reported falsely the following as constituting all the community property of the said Blas Maria Gutierrez and his wife, to wit: Their homestead in San Ygnacio; 300 head of cattle; 34 mares; 2 stallions; 13 colts; 7 wild mules; 7 colts, large; 4 gentle mules; 70 head of goats; and other personal property, including household furnishings—the total value whereof, as returned by said administrator and the appraisers acting with him, being $7,215.75. That said rendition was made on the 3d day of June, A. D. 1898, and, in truth and in fact, the total value of the personal property received by him was as alleged above, to wit, approximately $23,870; and it is alleged upon information and belief it consisted of seven hundred (700) to eight hundred (800) head of cattle of the value of twelve ($12.00) dollars to fifteen ($15.00) dollars per head; one hundred horse stock, including horses and mules of the value of twenty ($20.00) dollars per head; seventy (70) goats of the value of one ($1.00) dollar per head; cash in trunk about twelve thousand ($12,000.00) dollars; and other personal property mentioned in the inventory filed by said administrator."

The petition also alleges that Blas Ma. Gutierrez, just before his death, executed an holographic will and attached to it a list of his property, and directed the disposition thereof, and placed same in the trunk mentioned, but that Eudoxio Martinez took possession of the trunk and its contents, including about $12,000 in money about $10,000 or $11,000 being in United States currency, and about $500 in Mexican silver coin, as well as papers, documents, bills of sale, accounts of sales, and purchases of cattle, goats, horse, stock, real estate, and money on hand. It is alleged that plaintiffs were small children, and were ignorant of their legal rights, could not read English, were not familiar with the laws of Texas, and did not know that the holographic will could be probated; that Eudoxio Martinez had all these papers, including the will, or had destroyed same, at the time he took out letters of administration; that Martinez charged all his living expenses to the estate and made "large and extravagant and untrue charges of the items of food and other alleged expenses which these plaintiffs never shared in or used." And finally it is charged that the administrator mismanaged the estate and appropriated to his own use "the aforesaid stock and various other items of property and money, in that he never fairly and truly reported all of the property of said estate as hereinbefore enumerated, and in that he has never made any true and correct accounting of all of the personal property of said estate to said probate court of Zapata county, and that court had no means of ascertaining the real and true facts, but, of necessity, had to rely upon the sworn statements of said defendant." The prayer is for $8,000, with interest from 1906.

It is alleged that the jurisdiction of the county court of Zapata county terminated upon the 3d day of April, 1906, and that the ages of the heirs are as follows: Trinidad, born March 13, 1881; Isabel, born November 19, 1882; Maria S., born October 22, 1884; Vicente, born December 19, 1886; Dolores, born December 18, 1888; Jose Maria, born January 14, 1891; Amado, born February 17, 1893; Maria del Refugio, born May 1, 1895—and that Amado and Maria del Refugio were still minors at the time the plaintiffs' second amended petition was filed, January 2, 1914. It is alleged that the plaintiffs did not discover the alleged mismanagement and know of their rights until 1913; and it is charged upon information and belief

that the bondsmen were aware of and aided and abetted Eudoxio Martinez in his fraudulent reports and in his unlawful appropriation of the personal property.

The original petition was filed in this cause on the 22d day of September, A. D. 1913.

Eudoxio Martinez answered, denying all the material allegations; pleaded that the Blas Ma. Gutierrez estate was partitioned in the probate court of Zapata county by an order dated February 12, 1906, and that at that time the plaintiffs were all fully advised of the condition of said estate and the way in which it had been handled, and none of them made any objection, nor had they or any of them ever claimed that said estate had not been honestly and fairly handled. Eudoxio Martinez also claimed that the estate was indebted to him in the sum of $600, same being 10 per cent. on $6,000 received and paid out; and also for $195 advanced with which to buy land, as well as for taxes. He claimed $795. He also pleaded the two and four year statutes of limitation.

The bondsmen denied the allegations as to any knowledge on their part of any mismanagement of the estate on part of Martinez, or of their participation therein; pleaded the orders and judgments of the probate court as settling the property status; and interposed the two and four year statutes of limitation.

The case was submitted on special issues, and in response thereto the jury answered:

(1) That Eudoxio Gutierrez did not render a full and complete account of the estate in his inventory.

(2) That Blas Gutierrez died possessed of 700 head of cattle valued at $11 per head, or a total of $7,700.

(3) That he left 100 horses valued at $15 per head, or a total value of $1,500.

(4) That he had 80 goats valued at $80.

(6) That he left $500 (gold).

(7) That Eudoxio Martinez came in possession of $500 in money.

(8) That Blas Gutierrez did not leave an holographic will.

(10) That there was no evidence that the bondsmen knew of the administrator's failure to render all of the property.

(11) That Trinidad Martinez, Maria S. Gutierrez, Isabel Gutierrez, Maria S. Gutierrez, and Vicente Gutierrez were not acquainted with and in possession of the facts as to the extent and value of the property that came into Eudoxio Martinez's possession four years prior to September 22, 1913, the date the suit was filed.

(12) That the above parties came in possession of the facts during July, 1913.

(13) That 400 head of cattle valued at $4,700, 19 head of horses valued at $981, and 10 head of goats valued at $45, or a total valuation of $5,726, came into the possession

of Eudoxio Martinez as administrator that he did not report in his inventory and appraisement.

(14) That 12 per cent. of the cattle that were not reported died from the effects of the drought in 1901 and 1902.

Upon these findings, the court entered judgment in favor of the plaintiffs against Eudoxio Martinez for $6,226, "less 12 per cent. of the cattle lost by the drought of 1901 and 1902, amounting to the sum of $564, leaving the eight-ninths remainder, so adjudged to plaintiffs in the sum of $5,033, as principal, together with interest thereon from April 3, 1906, at 6 per cent., amounting to the further sum of $2,395.68, making a total so adjudged against Eudoxio Martinez in the sum of $7,428.68, for which execution is awarded. The plaintiffs are also awarded a judgment against Proceso Martinez and Manuel C. Garcia in the sum of $5,000, stipulated in the bond, and execution awarded for that.

[1] The first assignment of error is not considered, because not in accordance with the rules of briefing. It has no adequate statement to show the matters about which complaint is made, and what purports to be a proposition under the assignment is a mere argument.

[2] Neither will the second assignment be considered, because it is not clear whether the admission of testimony is the ground of complaint, because of the substance of the same, or whether because it was apparent of record that the cause of action was barred by the statute of limitation. And the statement following the proposition does not set forth the evidence bearing on the objection, but merely copies a bill of exception. Neither are the allegations of the petition which seek to excuse the bringing of a suit earlier set forth.

The third and fourth assignments are without merit, and are overruled.

[3] The fifth assignment complains of the second special issue submitted to the jury, which is as follows: "What was the number per head and kind—that is to say, cows, bulls, and heifers—that Blas Ma. Gutierrez died possessed of, and what was their value?" because the defendants could only be held liable, if at all, for the number and value that went into his possession after his qualification as administrator of the estate. Standing alone, we are inclined to agree with appellants that this charge is not correct. But, when the same is considered in connection with the other issues submitted, we do not think this should reverse the case. The first question submitted was: "Did the defendant Eudoxio Martinez render a true, full, and complete account of all the property that came into his hands as administrator in the inventory which has been read in evidence and which will be given you in your retirement?" To this the jury answered, "No." In the 13th special issue, the jury was asked: "What was the number and kind of live stock

that came into the possession of Eudoxio Martinez, the administrator of said estate, that was not reported in the inventory and appraisement and the value thereof?" This charge was not excepted to on the ground that it assumed that Martinez did not report some of the stock that came into his possession. In answering this question, the jury found that Martinez did not report 400 head of cattle worth $4,700, 19 head of horses valued at $981, and 10 head of goats valued at $45. And the jury also found that Martinez came in possession of a bag of money of the value of $500, gold, which, added to the value of the missing stock, aggregates $6,226, the amount for which the judgment was rendered against Martinez for principal, less one-ninth thereof—his wife's share. So, while the charge complained of, standing alone, might be objectionable, no harm was done appellant thereby, and the assignment is overruled.

On the matters complained of in the eighth assignment, the jury found that the bondsmen did not know that the administrator had failed to render part of the property, and we are unable to see how injury could result when the jury found with appellants on that issue. This assignment is overruled.

[4] What purports to be the ninth assignment is merely a reference to a page of the transcript for a certain paragraph of appellants' motion for a new trial. We do not doubt that the paragraph could be found by following the directions given; but the rules of practice require litigants to present their cases in briefs wherein the assignments of error, propositions, statements, authorities, etc., will appear, to the end that this court, in its many heavy duties, may not be required to search out ponderous records to discover the wrong done. The party who complains of an injury has the burden of showing how he got hurt, and, when that is not done, this court will not be called upon to diagnose his case. This assignment will not be considered.

[5] The tenth assignment complains of the charge on the statute of limitation because it is claimed that there is nothing in the evidence that showed or tended to show that plaintiffs could not have brought this suit within four years after the cause of action accrued. The proposition thereunder is to the effect that the cause of action of every one of the plaintiffs who had passed his twenty-fifth birthday at the time the suit was filed was barred by the four-year statute of limitation. In the statement it is said that limitation was pleaded by all the defendants, and that various excuses were given for not bringing the suit sooner. No statement whatever is made, however, as to the facts which would show a limitation plea good. The statement is not germane either to the assignment or proposition thereunder, and we cannot consider same.

The evidence in this case discloses that the administration was closed and the property

then on hand was partitioned among the heirs in the probate court of Zapata county in the spring of 1906. Then the administrator and his bondsmen were discharged by an order of that court. The jury found that the bondsmen knew nothing whatever as to any property being withheld by Martinez from the inventory. We have searched the record in vain to see if there was sufficient evidence to excuse the failure to bring the suit sooner. One of the parties testifies positively that Blas Ma. Gutierrez had made a will in his own handwriting, but that she did not know that it was a good until she conferred with her attorneys shortly before bringing the suit. Another of the parties also testifies in a way to such a will being in existence. The jury, however, found that no such will was ever executed. The way the estate was conducted was a matter of public record in Zapata county, and of this the parties were bound in law to take notice. If Martinez practiced fraud, it was neither of that nature termed in law "suggestio falsi," or of keeping silent when he should speak, nor of "suppressio veri," because his acts were public acts. There is no legal showing made as to why the same evidence upon which the plaintiffs went to trial could not have been obtained any time from the day the administration was closed up to the time the suit was filed or within four years; nor is there any evidence that Martinez or any of his bondsmen concealed any of this evidence from the plaintiffs. The evidence is further to the effect that about the time of the settlement of the estate and partition of the property in 1906 there were charges of incorrect accounts, etc., to such an extent that the commissioners could not agree. Limitation will run against an action for fraud, and it begins to run from the time of the discovery thereof, or from the time when, by the use of reasonable diligence, it could have been discovered.

Miss Maria Salome Gutierrez, one of the plaintiffs, said that her father read to her his will, and that at that time he had about $12,000 in his trunk, consisting of silver, gold, and currency, and that there was about $500 in silver and $300 Mexican money. Another sister said there was so much silver in a sack that she could not lift it. This is about all of the testimony on the matter of money on hand. And yet the jury found that out of all this treasure there was $500 gold, and at the same time found that Blas Ma. Gutierrez did not leave a will at all. These facts, if they were facts, were known to the plaintiffs all the while, and Miss Salome was in her thirtieth year at the time of the trial. No excuse whatever is given why the suit was not sooner brought, except that most of them were young ladies and did not want to stir up trouble. If stock were withheld from the inventory, no reason is assigned why that fact was not sooner discovered or, by the use of reasonable diligence, could not have been discovered

at any time. The will matter may be set aside because there was no will, under the jury's finding. Miss Salome says she called her brother's and sisters' attention to the existence of the will about eight days after her father died, and says she told C. A. McLane, a lawyer. As to Vicente, she says, "I told him these things as soon as he had use of reason," and he was 27 years old at the time of the trial. After the final report was filed and the administrator and bondsmen were discharged in 1906, there is no evidence of the concealment of facts or of any conspiracy among Martinez and his codefendants. The reports were public records, and the witnesses who knew of the cattle on hand that are claimed to have been omitted were as accessible to the appellees then as they were at the time the suit was filed.

[6] In case of fraud, limitation would not run until the discovery of the fraud, or until, by the use of reasonable diligence,. the same could have been discovered. Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 961; Standford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 449; Shuttleworth v. McGee, 47 Tex. Civ. App. 604, 105 S. W. 823; Prosser v. First Nat'l Bank, 134 S. W. 781. In the last-named case it is held that fraud or ignorance thereof, unaccompanied by concealment, will not prevent the running of the statute of limitation. The evidence in this case is totally insufficient to prevent the running of the statute.

[7] Article 5689 of the Revised Statutes provides:

"All suits on the bond of any executor, administrator or guardian shall be commenced and prosecuted within four years next after the death, resignation, removal or discharge of such executor, administrator or guardian, and not thereafter."

The object of statutes of this character is to fix a time certain for the benefit of sureties, so that they may know definitely when their obligations as sureties will terminate. These statutes are for the benefit of sureties, and not for that of the principal. We are not deciding what the rule would be as to sureties if they were parties to fraud in concealing from the heirs the true condition of the estate, either at the time the inventory was filed or at the time of the closing of the estate, because the jury has found that the bondsmen did not know anything about their principal's fraud, if he was guilty of such, and there is absolutely no evidence that they have ever gone into any scheme to withhold or conceal information as to the estate from the heirs. As to the sureties the statute of limitation would certainly begin to run, as against those heirs who were of legal age, from the time of the discharge by the probate court of Zapata county. McClellan v. Mangum, 33 Tex. Civ. App. 193, 75 S. W. 840; Marlow v. Lacy, 68 Tex. 154, 2 S. W. 52; Allen v. Stovall, 62 S. W. 87; Freedman v. Vallie, 75 S. W. 322.

The fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, and twentieth assignments are sustained, and this makes it unnecessary to deal specifically with the other assignments.

We therefore hold that, as to those heirs who were of legal age more than four years before the suit was brought, viz., Trinidad Martinez and her husband, Fernando Martinez, Isabel Gutierrez, Maria S. Gutierrez, Dolores Gutierrez, and Vicente Gutierrez, they should take nothing as against Eudoxio Martinez and his bondsmen, Proceso Martinez and Manuel C. Garcia, and the judgment of the trial court is reversed and here so rendered. But as to those heirs who were protected by minority, viz., Jose Maria Gutierrez, Amado Gutierrez, and Maria del Refugio Gutierrez, the judgment of the trial court will be affirmed against Eudoxio Martinez and Proceso Martinez and Manuel C. Garcia for three-eighths of the judgment rendered in the lower court against Eudoxio Martinez, and that judgment is so reformed as to make it clearly appear that said sum is adjudged against the said Eudoxio Martinez and his bondsmen, Proceso Martinez and Manuel C. Garcia.

Five-eighths of the costs in this court and the court below will be adjudged against appellees, except Jose Maria Gutierrez, Amado Gutierrez, and Maria del Refugio Gutierrez; and the other three-eighths of the costs is adjudged against the said Eudoxio Martinez and his bondsmen, Proceso Martinez and Manuel C. Garcia.

Reversed and rendered in part and reformed and affirmed in part.