BARBIAN v. GRANT et al.    (No. 8468.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 18, 1916.)

1. LIMITATION OF ACTIONS ⬤⟿37(2)—SUIT FOR RESCISSION AND DAMAGES.

Where the action for equitable relief of a party induced by deceit to buy lands is not barred by limitation, the court will not apply differing standards of limitation to the right to rescission and the right to damages, but, upon establishment of the material allegations showing plaintiff's right to rescind, will proceed to administer all relief, legal and equitable, to which plaintiff may show himself entitled, such as a judgment for payments made before discovery of the fraud, the value of the property defendants may have placed beyond their power to restore, etc.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 183; Dec. Dig. ⬤⟿ 37(2).]

2. VENDOR AND PURCHASER ⬤⟿45—RESCISSION—QUESTION FOR JURY.

In an action for rescission by a party who purchased realty, the fact that defendants denied the fraud charged to them, and denied making the representations, merely presented a conflict in the testimony which it was the jury's province to determine.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 77, 78; Dec. Dig. ⬤⟿ 45.]

3. VENDOR AND PURCHASER ⬤⟿33—RESCISSION—FRAUD—STATEMENTS MADE ON AUTHORITY OF ANOTHER.

The fact that a seller of land, in describing it to the buyer, merely repeated what another had told him of it, did not relieve him of liability to the buyer for rescission if the repeated statements amounted to a representation of the character of the land that induced the buyer to take it, exchanging his land and giving notes therefor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66; Dec. Dig. ⬤⟿33.]

4. VENDOR AND PURCHASER ⬤⟿123—PARTIES INTERESTED AS BUYERS—QUESTION FOR JURY.

In a suit for rescission by the buyer of realty who gave notes and a conveyance of his land, whether certain defendants were jointly interested in and participated with another defendant in the acquisition of plaintiff's property held for the jury.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 221–227; Dec. Dig. ⬤⟿123.]

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. PRINCIPAL AND AGENT ⬥171(5)—ACCEPT-ANCE AND RETENTION OF FRUITS OF FRAUD—SALE OF REALTY.**

Where two defendants in a suit for rescission by the buyer of realty participated with another defendant in the acquisition of plaintiff's property, they could not retain the fruits of the other defendant's fraud, if any, on the ground that individually they made no representations, since the other defendant was their agent, and an acceptance and retention of the fruits of his fraud subjected them to liability.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 649; Dec. Dig. ⬥171(5).]

**6. VENDOR AND PURCHASER ⬥118—RESCISSION—TENDER BACK OF LAND RECEIVED—FORFEITURE BY STATE.**

Where plaintiff was induced to purchase a tract of state school land by fraud, and such land was not forfeited to the state for failure to pay interest until after the institution of plaintiff's suit for rescission, wherein a reconveyance was tendered defendants, the forfeiture by the state was no defense to the action.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 210, 211; Dec. Dig. ⬥118.]

**7. EVIDENCE ⬥114—RELEVANCY.**

In a suit to rescind a purchase of realty, a defendant should have been required to answer the question if it was not true that the $6,000 consideration mentioned in the deed to him for certain land was not in fact paid by a transfer or conveyance of a certain right in a maize header patented to him, and in which the two other defendants owned a certain interest at the time, since an affirmative answer would have tended to support plaintiff's allegations and evidence that the other two defendants were interested with the witness in the land conveyed to plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 125–132; Dec. Dig. ⬥114.]

**8. EVIDENCE ⬥230(1)—ADMISSIONS.**

In a suit to rescind a purchase of land for fraud, testimony that a defendant stated in the presence of another defendant that the land was rich and good agricultural land, and was north of a certain town which was not the case, was admissible as in the nature of an admission against interest.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 835, 840, 845, 851; Dec. Dig. ⬥230(1).]

**9. WITNESSES ⬥379(1)—CONTRADICTION.**

The conversation was also admissible as contradictory of defendant's testimony on the trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1209, 1247; Dec. Dig. ⬥379(1).]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Suit by Peter Barbian against W. C. Grant and others. From a judgment for defendants, plaintiff appeals. Reversed, and remanded for new trial.

J. W. Moffett and Eugene De Bogory, both of Abilene, for appellant. Cunningham & Oliver, B. A. Cox, and Scarborough & Davidson, all of Abilene, for appellees.

CONNER, C. J. This is an appeal from a judgment in response to an instructed verdict in a suit instituted by appellant, Peter Barbian, against appellees, W. C. Grant, John Wiltshire, and W. B. Wiltshire, for rescission. As alleged, Peter Barbian on the

2d day of December, 1911, conveyed to the defendants 20 acres of land in Taylor county of an agreed value of $800, and 9 certain promissory notes aggregating $3,165, executed by one T. H. Barksdale and secured by a vendor's lien upon 120 acres of another survey of land situated in Taylor county, and also gave 16 promissory notes executed by himself aggregating the sum of $3,100, with a credit thereon of $1,550, all of which was given by him in exchange for a tract of 471 acres of state school land situated in Lamb county, Tex.; the plaintiff as part of said transaction agreeing to assume and pay to the state of Texas the interest and unpaid purchase money due upon said 471-acre tract of land.

The plaintiff alleged, in substance, that at the time of said exchange the title to said 471 acres stood in the name of the defendant W. C. Grant, but that, in fact, all of the defendants alike were partners and interested in it together; that the defendants at and before said exchange of properties represented the said 471 acres of land to be good, level agricultural land and situated about six miles north or a little northeast of the town of Olton, the county seat of Lamb county, and of the reasonable market value of $12.50 to $15 per acre bonus over and above the state debt of $5.25 per acre. It was charged that the plaintiff was not acquainted with the location and quality of the particular section of land named, but was acquainted with the section of Lamb county in which said land was represented to be, and that he fully trusted in and believed the defendants' said representations, but that, in truth and in fact, they were false and fraudulent. It was further alleged that in truth said 471 acres of land were situated some 10 or 12 miles south and west of said town of Olton and in the sand hills, where lands were of little or no substantial market or other value. The plaintiff prayed for a cancellation of all the transfers mentioned, and sought to recover the property that had been so conveyed by him in exchange for said 471 acres of land, together with some $300 of interest and purchase money that he had paid to the state since said exchange. He further prayed in the alternative that, if it should be found that any or all of said property had been so disposed of as that a rescission and recovery could not be had, he then be permitted to recover his damages, which were laid in the sum of $6,000.

The defendant answered by general and special exceptions, by general and specific denials, including a verified denial of the partnership alleged.

The court overruled all demurrers and exceptions, except one which will be hereinafter noticed, and, after the introduction of the testimony, gave the peremptory instruction to the jury to find for the defendants.

Appellant first assigns error to the action of the court in sustaining the following exception:

"This defendant specially excepts to that part of plaintiff's petition in which he asks for damages because the same is barred by the two-year statute of limitation."

As stated, the conveyances which appellant seeks to rescind were executed on the 2d day of December, 1911, and this suit to rescind, as shown by the record, was not instituted until the 7th day of November, 1914. It thus appears that about three years elapsed between the date of the alleged fraud and the institution of the plaintiff's suit. The plaintiff, evidently with the view of avoiding any attempted defense by limitation, alleged that the fraud specified in his petition had not been discovered by him until on or about the 29th day of September, 1914, setting forth certain circumstances, not thought to be necessary to mention, as a reason why he had failed to discover the fraud earlier. In 25 Cyc. 1181, it is said:

"As a general rule, where the statutes do not otherwise provide, a right of action at law to recover damages for a fraud accrues, and the statute begins to run when the fraud is successfully consummated, not when it is discovered. So, in cases where a purchase of property is induced by fraud, the statute begins to run against the purchaser's right of action from the time when the sale is completed. * * * But the equitable rule that the statute runs from the discovery of the fraud applies to actions of deceit in those jurisdictions where that rule has been adopted by common-law courts, or has been adopted in statutes applicable to actions at law."

We have found among our own decisions no case in which the distinction made in the text from which we have quoted has been applied. Most of the cases that we have examined have been cases where a rescission of conveyances or annulment of decrees were sought, and they all recognize the equity doctrine that fraud will prevent the running of the statute in favor of the party who perpetrated the fraud until discovered, or by the use of reasonable diligence it ought to have been discovered. See Brown v. Brown, 61 Tex. 45; Cooper v. Lee, 1 Tex. Civ. App. 9, 21 S. W. 998; Hodges v. Hodges, 27 Tex. Civ. App. 537, 66 S. W. 239; Calhoun v. Burton, 64 Tex. 510; Smalley v. Vogt, 166 S. W. 1; Mitchell v. Simons, 53 S. W. 76. The last two cases cited will be found, we think, on examination to be cases where the plaintiffs merely sought a recovery for damages because of the alleged frauds, and hence would be maintainable as actions for deceit at law. These two cases, however, as do the others cited, proceed upon the assumption that the statute of limitations will not begin to run until the fraud was discovered, or by the exercise of reasonable diligence might have been discovered. So that we would think it reasonably safe to disregard the distinction suggested by the reading from Cyc. and assume, in this state, where distinctions between law and equity are disregarded in the pleadings, to hold that in cases of fraud limitation will not begin to run as against the injured party until the fraud has been discovered, or until it might have been discovered by the use of reasonable diligence. The reason upon which the ruling of the court under discussion was based does not appear from the record. We infer, however, that it was not so much, if at all, because of any distinction to be made in actions for rescission and in actions for damages because of deceit, but rather on the ground that the facts alleged by the plaintiff as his excuse for not having earlier discovered the fraud were wholly insufficient. If we deemed the question material, we perhaps would be inclined to agree with this view of the plaintiff's petition. Bass v. James, 83 Tex. 110, 18 S. W. 336; Isaacks v. Wright, 50 Tex. Civ. App. 312, 110 S. W. 970; Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S. W. 40; Id., 117 S. W. 1023. But even in those states where the statute runs from the commission of the fraud it is held that, "where purely equitable relief is sought aside from, or in addition to, a mere money judgment, the statute runs only from the date of the discovery." See 25 Cyc. 1178. And in the case before us the gist—the very essence—of appellant's case was for rescission, a purely equitable relief, and against which, under our authorities, the statute of limitation does not begin to run until four years. Revised Statutes, art. 5690; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Groesbeck v. Crow, 91 Tex. 74, 40 S. W. 1028.

[1] The plaintiff's action for rescission therefore not having been barred by limitation, the court will not apply two differing standards of limitation, but upon the establishment of the material allegations showing plaintiff's right to rescind will proceed to administer all relief, both legal and equitable, to which the plaintiff may show himself entitled, such as a judgment for payments made to the state before discovery of the fraud, the value of such property, if any, as defendants may have placed beyond their power to restore, etc. See Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854; Railway Co. v. Hawkins, 163 S. W. 132; Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144.

Appellant also assigns error to the action of the court in giving the peremptory instruction, and we think the assignment must be sustained. A consideration of appellees' evidence renders it very plain that it tends to prove his allegations of fraud and misrepresentations relating to the character and location of the 471 acres situated in Lamb county. Indeed, appellees' testimony, at least apparently, makes a clear case for rescission.

[2, 3] The fact that the defendants denied the fraud and denied making the representations charged merely presented a conflict

which it was the province of the jury to determine. Nor does the fact that appellee Grant, in describing the land, merely repeated what another had told him of it, relieve him, if the statements so repeated amounted to a representation of its character that induced the appellant to make the exchange. Boles v. Aldridge, 175 S. W. 1052. Nor do we think it can be said that, as a matter of law, the appellees John and W. B. Wiltshire are to be discharged under the evidence. True, neither appellant nor any other witness testified that either of the Wiltshires made any representation as to the character of the land, but it seems undisputed that appellee John Wiltshire assisted Grant in negotiating the exchange, and there was evidence tending to show that he was present and heard the representations made by Grant and made no denial of their truth. Indeed, according to the testimony, he seems to have been the principal speaker in the negotiations, and while he stated that he knew nothing of the character of the land except what the appellee Grant had said, yet appellant's testimony as well as an ex parte deposition of the appellee Grant, and perhaps other circumstances, indicated that the Wiltshires were interested together with Grant in the land, and it is undisputed that they received the vendor's lien notes secured by the 120 acres of land. They also received part of the series of notes executed by the appellant. They testified that these things were purchased from Grant, contending that in part payment therefor they extinguished an indebtedness of Grant's to them. They yet hold at least two of the notes executed by appellant.

[4, 5] Through foreclosure proceedings they yet possess the 120 acres of land upon which the nine Barksdale notes rested, and under all of the circumstances we think it was for the jury to say whether the Wiltshires were jointly interested in and participated with the appellee Grant in the acquisition of appellant's property. If they did, they cannot retain the fruits of appellee Grant's fraud, if any, on the ground that individually they made no representations. In that state of the case it must be held that Grant was their agent, and that an acceptance and retention of the fruits of his fraud cannot be upheld without incurring liability. See 31 Cyc. 1235. It is there said:

"Under the doctrine of equitable estoppel two persons may find themselves charged with all the consequences of agency as to third persons, when as between themselves there exists as a matter of fact no agency · at all, or no agency for the particular purpose in question. Strictly speaking, agency by estoppel should be limited to cases in which there is no real, but only an apparent, agency; for, when an actual agency is shown, whether by express or implied appointment, it is quite unnecessary to invoke the aid of estoppel. Practically, however, this distinction is not clearly made, and it is often impossible from the facts brought out by the evidence to determine whether the agency is actual or ostensible. In most cases the distinction would not affect the rights of the parties,

but, as elsewhere pointed out, occasionally a case may turn on whether the agency is implied or is one by estoppel. The doctrine of estoppel involves apparent or ostensible agency, which exists where the principal intentionally, or by want of ordinary care, induces third persons to believe another to be his agent, although he did not in fact employ him. As to third persons the distinction between actual and apparent or ostensible agency is unimportant, as the liability of principal and agent is the same in either case, but as between the parties themselves, of course, the ostensible agent is no agent at all. Apparent or ostensible agency is really agency by estoppel, and it is more strictly accurate to say that liability arises for the acts of such a so-called agent, not because there is any agency, but because the principal will not be permitted to deny it."

See, also, 20 Cyc. 85.

We are therefore of the opinion that because of the error of the court in giving the peremptory instruction the judgment must be reversed.

[6] In view of another trial we think it should also be said that a forfeiture by the state, if any, of the Lamb county school lands for failure to pay interest, etc., constitutes no defense to the plaintiff's action if the forfeiture did not occur until in August, 1915, after the institution of the plaintiff's suit wherein a reconveyance of the property was tendered to the defendants. A tender previous to the institution of the suit was alleged, and one was certainly made in the plaintiff's petition, and if the land was then in good standing and not subject to forfeiture, and the plaintiff then in an attitude to reconvey and place the defendants in statu quo, his right to rescind existed, and if thereafter the interest was unpaid and the land became subject to forfeiture, the defendants at least knowingly participated in the neglect, and hence cannot interpose the failure as a defense to the action. Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700.

[7] We think also that the appellee Grant should have been required to answer the question if it was not true that the $6,000 consideration mentioned in the deed to him for the Lamb county land was not in fact paid by a transfer or conveyance of a certain right or interest in a maize header patented to him, and in which John and W. B. Wiltshire owned a certain right or interest at the time. The bill of exception to the refusal of the court to require the witness to answer this question states that Grant would have answered the question in the affirmative. If so, the answer would have tended to support the plaintiff's allegations and evidence to the effect that the Wiltshires were interested with Grant in the land conveyed to the plaintiff as a result of the negotiations in December, 1911.

[8, 9] So, too, we think the court should have overruled the objections to the testimony of the witness A. Bontke, to the effect that he had a conversation with the defendant W. C. Grant on or about December 1, 1911, in which Grant stated in the presence

of the defendant W. B. Wiltshire that the Lamb county land was rich and good agricultural land and was north of the town of Olton. The conversation with Bontke was admissible as in the nature of an admission against interest and as contradictory of Grant's testimony on the trial.

For the error of the court in taking the case from the jury, it is ordered that the judgment be reversed, and the cause remanded for a new trial.