TEXAS CO–OP. INV. CO. v. CLARK et al.
(No. 8804.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 1, 1919. On Motion for Rehearing, March 29, 1919.)

1. LIMITATION OF ACTIONS ⚖═▷28(1), 39(7)— RESCISSION OF CONTRACT—ACTIONS FOR DECEIT.

An action for the rescission of a contract to purchase corporate stock on the ground of fraud is governed by the four-year statute, but an action for damages by reason of fraud in the sale of corporate stock is governed by the two-year statute.

2. ACTION ⚖═▷25(2)—DECEIT—RESCISSION.

A petition in an action against a corporation by a purchaser of stock on the ground of fraud *held* one for damages for fraud and deceit, and not one for rescission of a contract.

3. LIMITATION OF ACTIONS ⚖═▷100(5)—FRAUD —ACCRUAL OF ACTION.

A cause of action for deceit accrues at the time that the defrauded party discovers facts which would put a reasonable man on notice of the fraud.

4. APPEAL AND ERROR ⚖═▷1039(9)—HARMLESS ERROR—ELECTION AS TO CAUSE OF ACTION.

Error of the court in calling upon plaintiff to elect as to whether he would prosecute his suit as one for rescission of contract or as one for the recovery of damages for fraud and

⚖═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

deceit was harmless, where it appeared the action was barred by limitations.

### On Motion for Rehearing.

5. PLEADING ⟲72—PRAYER—"GENERAL RELIEF."

A prayer for "general relief" is just as comprehensive in its scope as the prayer for "such other and further relief, judgments and decrees, legal and equitable, such as he may be entitled to under the facts in this case," etc.

Buck, J., dissenting.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by James Clark and others against the Texas Co-operative Investment Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Ramsey & Odell, of Cleburne, and Capps, Cantey, Hanger & Short, and David B. Trammell, all of Ft. Worth, for appellant. S. C. Padelford, of Cleburne, and D. W. Odell, of Ft. Worth, for appellees.

BUCK, J.    December 24, 1913, appellee filed his suit in the district court against the appellant and the Texas Organization Company. He alleged that on the ——— day of June, 1911, the defendant Texas Organization Company was engaged in promoting the organization of and in selling capital stock of the appellant company, preparatory to securing a charter for said corporation; that on said date the appellant, acting by and through its duly authorized agents, contracted with plaintiff to sell him stock in said company to the amount of $4,000, the sum of $1,000 being paid in cash, and plaintiff executed his notes for the aggregate sum of $3,000, which notes were delivered to the defendant; that as a part of the contract by which plaintiff was to become the purchaser of said shares of stock said defendant agreed that shares of stock in another company of the par value of $5,000 then owned and held by plaintiff would be accepted by the appellant as collateral security for plaintiff's notes for $3,000; and that said shares of stock in the appellant company would be immediately issued and delivered to plaintiff. He further alleged that on July 10, 1911, plaintiff contracted to purchase $2,000 additional in stock of the appellant company, for which $500 was paid in cash, and notes were executed for the remaining $1,-500; that in order to induce plaintiff to sign the application for the purchase of the stock and to pay the cash and execute the notes before mentioned, the defendant and his agents made certain representations which the plaintiff alleged were false, and that plaintiff relied on and was induced by said representations to execute the application

and the notes and pay the money. Plaintiff further alleged that on May 27, 1912, the said contract was rescinded and the notes canceled by defendant, but that defendant had failed and refused to repay to plaintiff the $1,500 paid in cash. The prayer of plaintiff's petition is as follows:

"Wherefore plaintiff sues and prays that he have judgment against the said defendant for the sum of $1,500, with legal interest thereon from and after the date of the payment of the same by plaintiff to said defendant, for cost of suit, and general relief."

In his sixth amended petition, upon which trial was had, plaintiff largely amplified his allegations, but the essence of the allegations contained in the said amended petition, and of the prayer for relief there made, was essentially the same as shown in the original petition. The amended petition was filed February 23, 1917. Defendant, among other defenses urged, pleaded the two and four years statutes of limitation. The cause was submitted to a jury under a general charge as between the appellee and the appellant; the court having given a peremptory instruction in favor of the Texas Organization Company. From a judgment in favor of the plaintiff the defendant Texas Co-operative Investment Company has appealed.

[1] While appellant's brief contains some 26 assignments of error, it will not be necessary for us to discuss any but the first, which complains of the refusal of the trial court to give defendant's specially requested peremptory instruction, on the ground that plaintiff's suit had become barred by the two-years statute of limitation. The controlling question is as to the nature of plaintiff's cause of action as disclosed by his pleadings. If the pleadings may properly be construed as presenting an action for rescission of the contract originally made between the plaintiff and the defendant, the four-years statute of limitation would apply, and plaintiff's cause of action was not barred at the time of the filing of the suit. Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854; Barbian v. Grant, 190 S. W. 789; Lone Star Life Ins. Co. v. Pierce, 200 S. W. 1104; Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39. If the action must be construed as one seeking damages for fraud and deceit, the two-years statute of limitation would apply. Gordon et al. v. Rhodes & Daniel, 102 Tex. 300, 116 S. W. 40; Bass v. James, 83 Tex. 110, 18 S. W. 336; Sowell v. Hoffman, 182 S. W. 1152.

[2] The majority of the court have come to the conclusion that plaintiff's cause of action, as pleaded, cannot be construed as an action for rescission, but is one for fraud and deceit, the fraud consisting of the alleged oral representations of the agent which in-

duced plaintiff to execute the instrument before mentioned and to pay the $1,500, that plaintiff's petition discloses that the defendant, appellant here, had, prior to the filing of the suit, canceled the notes, and that there was no part of the contract still executory. The application contract provided that upon the failure of the plaintiff to pay the notes executed the defendant would have the right to cancel the notes given and to retain the cash paid as liquidated damages. The evidence shows that shortly after the execution of the application and notes and payment of money by plaintiff, perhaps within three or four days, he came to Ft. Worth, where appellant company had its general office, and had a conversation with the manager, and told the latter of the agreement which plaintiff claimed he had with the agent selling him the stock. Plaintiff testified:

"I presented this stock to Mr. C. Ó. Hays in the office of the Texas Co-operative Investment Company. He was there apparently in charge of the office. When I went in there, I presented this stock to Mr. C. C. Hays. When I went there with the stock, I told him there was an agreement between me and Mr. Peeples that I was to turn the stock over to him as collateral, and he wouldn't—he says 'I don't want to see it; he had no right to do it.' He said Peeples had no right to do it. I thought it necessary to make an inquiry up there afterwards with reference to the value of the stock. Hays knew about it or said something to me about the person I inquired of. I talked to other parties, and told him I did. I went up to Mr. Hays' office and I told him I had been out there and tried to see if I could find out what the stock was worth and whether it was worth away above par value as they represented to me that it was, and I told him that six prominent men, financiers, all of them but one—I told him there was not one of them that had ever heard tell of the company; they said they didn't know a thing on earth about it. He had told me, he says, 'If you will get out and sell stock,' and I says, 'I can't sell it because it's got no value.' Hays said something about one of those men I told him I had consulted. It was Mr. Lon Beavers. He said that Lon Beavers professed to be a friend of his, 'but he is now trying to undermine me and ruin my business.' At that time I made a demand of him; I told him that I wanted him to cancel my notes and pay me my money back, the $1,500 in money that I paid him. He didn't agree to that. He said he wouldn't do it. I made another demand on him. I told him then if he wouldn't do that to cancel my notes and give me certificates of stock for the money that I had paid in and stock I had bought. I asked him to cancel the notes and pay me my money back. When he wouldn't do that, I asked him to give me certificates for the stock I had paid for. That was 150 shares. He said he wouldn't do it. * * * He said that that contract that I signed stated that if I didn't pay for the stock, pay the notes in a certain time, that he could cancel it."

[3] Considerable of this sort of testimony covering these conversations is presented in the statement of facts, but sufficient has been quoted to show that, within a few days after the contract was made between plaintiff and defendant, plaintiff discovered the facts which would have put a reasonable man on notice that the defendant did not purpose to carry out the promise which plaintiff claimed the agent had made to him, and that the representations as to the value of the stock, etc., were not true. Therefore plaintiff's cause of action accrued at that time.

[4] The trial court, at the instance of defendant, called upon plaintiff to elect as to whether he would prosecute his suit further as one for rescission and cancellation, or as one for the recovery of damages for fraud and deceit. The plaintiff declined to make this election, but stated to the court that he would stand upon and rely on the sixth amended petition, whereupon the court construed the action to be for the recovery of money based on alleged fraud of defendant in procuring same from plaintiff, and ordered that the cause proceed to trial. In his charge to the jury the court proceeded upon the theory that the action was one for the recovery of money secured through fraud and deceit. But this action of the court becomes immaterial, if the evidence discloses, as we think it does, that the cause of action was barred by the two-years statute of limitation. We are of the opinion that the evidence makes it conclusive that plaintiff discovered the alleged fraud practiced upon him more than two years prior to the filing of his suit. As to this conclusion we all agree. The writer, however, is of the opinion that the pleadings justify the conclusion that the suit is one for a rescission of the original contract or application under which plaintiff agreed to purchase the stock in appellant's company. The cancellation of the notes given and the recovery of the money paid were but incidental to and flowing from the right of rescission of the original contract. "Rescission," defined by Black on Rescission and Cancellation, vol. 1, p. 3, is as follows:

"To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo, that is, an offer by the moving party to restore all that he has received under it, with a demand for the similar restoration to him of all that he has paid or given under it, and, in effect, a mutual release of further obligations."

The writer is further of the opinion that the fact, as pleaded by plaintiff, that defendant had already canceled the notes, would not deprive plaintiff of his right of rescission. Defendant was retaining the $1,500 by reason of its contention that the contract made was binding. Plaintiff insisted that it was not binding by reason of the alleged fraud. Therefore plaintiff, in the opinion of the writer, had the right to have tried the issue as to whether fraud was practiced in securing his signature to the application and consent to the contract. The fact that some of the relief to which he would be entitled under ordinary circumstances if he should prevail had already been granted by the defendant it does not appear to the writer would affect the character of the suit. The cancellation of the notes already made by defendant was in pursuance of a stipulation contained in the contract that upon the failure to pay the notes the defendant would have the right to cancel the notes and retain the cash. But this contractual right on the part of defendant, plaintiff claimed, did not exist, because of fraud practiced. Plaintiff was, in effect, saying to the defendant:

"You had no right to cancel the notes by virtue of the contract, for the contract is unenforceable for fraud. But I have the right to have the notes canceled and to recover the money paid because of your fraud."

But the majority have concluded otherwise, and the judgment will be reversed, and here rendered for appellant.

BUCK, J., dissenting.

On Motion for Rehearing.

BUCK, J. [5] In his motion for rehearing appellee insists we erred in our original opinion in stating that the prayer, as well as the allegations, in the original petition was substantially the same as in the sixth amended or trial petition. He insists that in the original petition he asked for special relief only, while in the petition upon which the trial was had he prayed "for such other and further relief, judgments and decrees, legal and equitable, such as he may be entitled to under the facts in this case," etc. The original petition contained a prayer for "general relief," as shown by the transcript. This prayer was as comprehensive in its scope as the one in the trial pleading. Lee v. Boutwell, 44 Tex. 151, cited by appellee in support of his contention that we erred in the statement made.

Appellee further says that we erred in holding that the trial court had the authority to require the plaintiff to elect upon which ground for rescission set forth in his petition he should proceed to trial. By reference to our original opinion it will be noted

that we did not so hold. The majority concluded that the petition must be construed as an action to recover damages for fraud and deceit, and not one for rescission of the original contract. Hence the trial court's action in this respect was immaterial. The single cross-assignment of appellee is directed to the trial court's action requiring an election. There is no cross-assignment to the exclusion of any evidence offered by appellee. Apparently the evidence submitted by appellee was the same as it would have been if the trial court had not required an election. Hence appellee's cross-assignment is overruled.

For the reasons given, the motion for rehearing is overruled.

BUCK, J., dissenting as before.