## ALLISON–RICHEY GULF COAST HOME CO. v. WELDER et al. (No. 7847.)

(Court of Civil Appeals of Texas. Galveston. March 4, 1920.)

**Limitation of actions ⬅143(6)—Extension of notes and lien by buyer kept lien enforceable against prior buyer from him.**

Under Rev. St. 1911, arts. 5694, 5695, extension by buyer of land of vendor's lien notes and lien made when neither the original debt nor lien was barred, and when notes were in hands of transferee, *held* to have kept lien alive and enforceable against his own vendee until four years after new maturity date, though his vendee had bought land before contract of extension, and had then assumed of record payment of notes against it, payment of which was subsequently extended.

Appeal from District Court, Brazoria County; Sam'l J. Styles, Judge.

Suit by J. F. Welder and others against the Allison-Richey Gulf Coast Home Company and another. From judgment for plaintiffs, defendant company appeals. Affirmed.

F. J. Winter and Harry Holmes, both of Houston, for appellant.

A. R. Rucks, of Angleton, and J. T. Linebaugh, of Victoria, for appellees.

GRAVES, J. This cause involves a construction of present article 5695, Vernon's Sayles' Statutes, under this state of facts:

December 16, 1909, Harry P. Radcliffe sold to W. R. Allison 81.4 acres of land out of the north portion of section 6, H. T. & B. R. R. Company survey, abstract 544, in Brazoria county, Tex., by deed of that date duly recorded in that county on April 4, 1911, for a total consideration of $2,035, of which $679 was paid in cash and the balance evidenced by Allison's three notes to Radcliffe for $452 each, carrying a like vendor's lien on the

land with that reserved in the deed to secure their payment, being numbered 1, 2, 3, providing for interest and attorney's fees, and maturing, respectively, on or before one, two, and three years after the date of the transaction, December 16, 1909.

On May 15, 1911, by an assignment thereof recorded in the same county five days later, Radcliffe regularly sold and transferred these notes and the vendor's lien so securing them to one Theo. Buhler. Thereafter Buhler died, and his wife, Mrs. Cathrine Buhler, as his residuary legatee, became the owner of the notes and lien, succeeding to all of Radcliffe's rights and equities by reason of the giving of the same to him by Allison.

Thereafter, on the 26th day of March, 1914, less than four years after the maturity of any of them, Mrs. Buhler, being at that time such owner and holder of the notes and the accompanying lien, made a written contract with W. R. Allison, extending the date of maturity of the debt evidenced by all three of these notes to June 16, 1914, which on the same date was signed and acknowledged by them both as provided in the law relating to deeds of conveyance, and on April 1, 1914, was duly filed and recorded in the deed records of Brazoria county where the land lay, the terms of the extension agreement specifically binding Allison to pay the notes, with interest and attorney's fees, on the new maturity date, and acknowledging the existence and continuance of the original vendor's lien as securing them.

In the meantime, however—that is, on September 12, 1912—W. R. Allison had by general warranty deed conveyed this land to the Allison-Richey Gulf Coast Home Company, a corporation, as part consideration for which that company bound itself by recitals contained in the deed to assume and pay to Radcliffe, or his assigns, Allison's above-described three vendor's lien notes to him of date December 16, 1909. This deed of conveyance and assumption was duly filed and recorded in the Brazoria county deed records on September 19, 1912.

The corporation was not a party to the extension contract between Mrs. Buhler and Allison, nor did it otherwise ever execute or acknowledge any contract changing the maturity date of the indebtedness it had so undertaken to pay, its obligation to pay the same having arisen solely out of its assumption of the notes under the terms of Allison's deed to it.

The present holders of the notes, successors to Mrs. Buhler in the title and ownership thereof, in this suit, which was filed June 13, 1918—over four years after the original maturity of the notes, after the taking effect of article 5695, and after the corporation's assumption thereof to Allison, but within less than that period after the maturity of the debt and lien as extended by the agreement between Mrs. Buhler and Allison—recovered a judgment for the balance due on the notes against Allison alone, with a foreclosure of the vendor's lien on the land so securing them against both him and the Home Company.

The Home Company alone appeals, asserting through a number of assignments that the indebtedness was barred as to it by reason of its not having been a party to the extension agreement, and that its plea of four-year limitation under article 5695 should have been sustained.

The relevant part of that article, as amended at the First Called Session of the Thirty-Third Legislature (chapter 27 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5695]), with the clause out of which the question here presented more particularly arises marked in italics, is as follows:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance *by the party or parties obligated to pay such indebtedness as extended* and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so * * * recorded. * * *

"And the owners of said vendor's lien notes reserved in deed of conveyance which were executed prior to July 14, 1905, * * * shall have four years after the act takes effect within which they may obtain such recorded extension as herein provided for, or bring suit to enforce the lien securing them if same are valid obligations * * * and not already barred by the four-year statutes of limitation when this act takes effect, and if such debt is not extended of record, and suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to extend such debt of record, or bring suit to enforce the lien securing same."

After finding, among others not thought to be necessary of mention, the facts we have summarized, the court stated two of its conclusions of law in this form:

"4. That the extension signed by Allison extended the vendor's lien to June 16, 1914, and for four years thereafter, as against all of the said defendants, notwithstanding Allison had previously sold the land to the Allison-Richey Gulf Coast Home Company, and notwithstanding the provisions of articles 5694 and 5695, Revised Statutes of 1911, as amended, and therefore said vendor's lien on the unreleased portion of said land is not barred by limitation.

"5. If mistaken, however, in the conclusion set out in paragraph 4, or in any of same, the court further finds that the extension agreement mentioned complied with the provisions of said articles 5694 and 5695, Revised Statutes 1911, as amended, and that said Allison was the party obligated to pay such indebtedness

as extended, and was the proper party to sign the agreement of extension of said indebtedness and extend and preserve said vendor's lien, and therefore said vendor's lien is still in existence to secure the amounts due on said notes as extended, as against all of said defendants."

We think, as applied to the facts here shown, this construction of the statute quoted was correct, and that, as neither the original debt nor lien was barred on March 26, 1914, Allison's contract of extension of that date with Mrs. Buhler kept this lien alive and enforceable against his own vendee, the Home Company, until four years after the new maturity date of June 16, 1914, that is, until June 16, 1918, notwithstanding the fact that the Home Company had bought the land from him on September 12, 1912, and had then assumed of record the payment of the notes against it he so subsequently advanced the maturity date of.

Appellant contends that in the clause "by the party or parties obligated to pay such indebtedness as extended" the Legislature meant to require the joinder of all parties subsequently buying the land from the original vendee under assumption in their deeds from him to pay his outstanding vendor's lien notes against it, regardless of their number, to any extension of the maturity dates of such original indebtedness, and that it was consequently a necessary party to the extension in this instance, in order for the running of the four-year statute of limitation on such notes and lien to have been stopped as to it.

We cannot acquiesce in this construction. It seems to us the plain purpose was to permit the original payee of such notes, or those standing in his shoes through acquirement of his securities, at any time before limitation has been completed against them, to keep his debt from becoming barred and his lien from being lost by an acknowledged and recorded written agreement to that effect with the maker of his notes, notwithstanding such maker may have in the meantime transferred the land charged with the lien to some one else who agreed with him to pay these notes; in other words, that the proper party to make such extension agreement with the original vendor, or with those who stand in his place, is the one who contracted with him at the creation of the obligation to pay it, and when that has been done, the full requirements of this amended statute have been complied with. To go further and require, as a condition precedent to ever getting his debt and lien properly extended, such an original vendor to make a still hunt over the country for, and to procure the properly acknowledged and recorded consent of, all those who may have subsequently acquired down through or under his vendee some interest in the land necessarily subsidiary and

secondary to his own, although as between themselves and their immediate vendor they may have assumed the payment of his debt, would, it seems to us, be going an unreasonable length, and we do not think our Legislature so intended; but we think it neither unreasonable nor inconsistent with the terms of the act to hold that it has been fully complied with when the one who originally contracted the debt comes in before it was barred, and, without reference to whether or not he has in the interim parted with his title to the land, says in the manner and form prescribed, "That is my debt, and I agree to extend it and the lien securing it to a future date and to pay it at that time." Indeed, that was the well-defined law before the statute here under review was passed, and no reason appears for holding that the Legislature intended to change it.   Flewellen v. Cochran, 19 Tex. Civ. App. 499, 48 S. W. 39; Montague County v. Meadows, 21 Tex. Civ. App. 256, 51 S. W. 556.

All other questions raised by appellant are merely ancillary to the one discussed, and since our conclusion upon it determines the merits of the appeal adversely to its contention, all assignments are overruled, and the trial court's judgment is affirmed.

Affirmed.