**R. B. TEMPLEMAN & SON v. KEMPNER.**
(No. 7831.)

(Court of Civil Appeals of Texas. Galveston. March 25, 1920. Rehearing Denied May 16, 1920. Dissenting Opinion May 17, 1920.)

1. **Mortgages ☞171(6), 305—Lien preserved by renewals as between parties valid against subsequent purchaser.**

As between mortgagor and mortgagees, the lien given by the original mortgage or deed of trust was preserved by each of the subsequent deeds of trust executed on renewals of the debt, and, such instruments having all been properly recorded, the lien is valid as against any subsequent purchaser.

2. **Limitation of actions ☞143(6)—Note and deed of trust constituting renewal a continuation of lien under statute.**

Note and deed of trust constituting renewal of note of previous year, and continuation of lien securing it, *held* a renewal of the note and a continuation of the lien under Vernon's Sayles' Ann. Civ. St. 1914, art. 5695, every requirement of which was met and complied with, such renewal and continuation of lien being binding on a subsequent purchaser from the mortgagor, so that the mortgagees' claim, suit having been instituted within less than four years after maturity of the renewed note, was not barred by limitations.

3. **Mortgages ☞154(4)—Purchaser who failed to record deed holds subject to lien of seller's mortgage to parties without notice.**

Where, when note and deed of trust were given, deed of purchaser from mortgagor was not of record, and mortgagees had no notice of her title or claim, as against mortgagees, she is in no better position than had she purchased on date on which she filed deed for record, subsequently to recordation of deed of trust.

4. **Mortgages ☞171(5)—Subsequent purchaser with notice bound by extension of note.**

A subsequent purchaser of land charged with notice of a mortgage lien by record of the mortgagees' deed of trust is bound by any valid renewal and extension of the note between the mortgagor, her seller, and the mortgagees.

5. **Mortgages ☞459(3)—Title not being in issue in foreclosure suit, limitation title cannot be set up.**

Title not being in issue in suit to foreclose a mortgage lien, the limitation title of defendant purchaser from the mortgagor cannot be set up as a defense.

6. **Mortgages ☞143—Possession of purchaser from mortgagor not adverse to mortgagees' claim of lien.**

Having acquired the mortgagor's title, and the land being subject to the mortgagees' lien when she placed her deed of record and took possession, possession of buyer from mortgagor was not adverse to mortgagees' claim of lien, she being entitled to possession as owner, and the mortgagees at no time having been entitled thereto.

Graves, J., dissenting on motion for rehearing.

Appeal from District Court, Grimes County; Ben H. Powell, Judge.

Suit by R. B. Templeman & Son against Mrs. Eliza Kempner. From judgment for defendant, plaintiffs appeal. Reversed and rendered.

Stoneham & Fahey, of Navasota, for appellants.

Williams & Neethe, of Galveston, and Lewis & Dean, of Navasota, for appellee.

PLEASANTS, C. J. This suit was brought by the appellants against the appellee to establish and foreclose a mortgage lien upon a tract of 257½ acres of land on the Joel Greenwood league in Grimes county, given to secure an indebtedness of $2,056.62, with interest from November 1, 1911, and 10 per cent. thereon as attorney's fees, due plaintiffs by the estate of J. Cross Baker, deceased.

The pleadings are quite lengthy and need not be set out, the following brief summary, copied from appellants' brief, being sufficient for the purposes of this opinion:

In their first amended original petition appellants pleaded their debt, as secured by deed of trust on the land in controversy, various renewals and extensions of their debt by written, signed, acknowledged, and recorded contracts of extension, the nonpayment of their debt, the ownership of the debt by appellants, the death of J. Cross Baker and the insolvency of his estate, the said J. Cross Baker's possession of the land at the time of the execution of their deed of trust, and appellants' want of notice of appellee's claim to the land.

Appellee answered by general and special demurrers and general denial, by plea of limitation of four years under act of July, 1913 (Acts 33d Leg. [1st called Sess.] c. 27 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5695]), amending article 5695 of the Revised Civil Statutes of 1911, and of three and five years under articles 5672 and 5674 of the Revised Civil Statutes of 1911, and by pleas setting up various former liens held by her on the lands in controversy, the cancellation of appellants' note and deed of trust, and the combination of appellants' cause of action with other causes of action.

The trial in the court below without a jury resulted in a judgment in favor of the appellee, quieting her in her title and possession of the land in controversy, and denying appellants a foreclosure of their asserted lien.

The facts are undisputed, and, succinctly stated, are as follows: Prior to December 22, 1902, appellee, Mrs. Eliza Kempner, obtained a judgment against J. Cross Baker in the sum of $3,778.36, and an abstract of said judgment was filed in the judgment abstract

records of Grimes county on the date mentioned. On February 23, 1903, the said J. Cross Baker and his wife, Mattie C. Baker, and C. H. A. Baker executed a deed of trust upon several tracts of land in Grimes county, one of which was the 257½–acre tract in controversy to secure H. P. Drought & Co. in the payment of five promissory notes due respectively in one, two, three, four, and five years, for the aggregate sum of $9,000, and bearing interest at the rate of 8 per cent. per annum. This deed of trust was duly recorded in Grimes county on March 6, 1903. Thereafter, on January 16, 1908, these five notes were, by a written contract duly executed and recorded, extended to become due on February 1, 1909, 1910, 1911, 1912, and 1913, respectively; the aggregate amount of the indebtedness so renewed and extended being $8,000. On the same day the Bakers executed other notes in favor of H. P. Drought & Co. in the aggregate sum of $11,000, and also notes for interest on said sum at the rate of 8 per cent. per annum secured by trust deed on the several tracts of land. On the same day, January 16, 1908, Mrs. Cordelia H. A. Baker, J. Cross Baker, and Mattie C. Baker, his wife, executed a deed to Mrs. Eliza Kempner, the appellee, conveying several tracts of land, including the 257½ acres in controversy in this suit, the consideration being the cancellation and settlement of all of the indebtedness of the grantors to said Eliza Kempner, or the firm of H. Kempner, and the further consideration that the said Eliza Kempner assume the payment of their indebtedness to H. P. Drought & Co., briefly described as follows:

"One note for $10,000 bearing date of the 16th day of January, A. D. 1908, and four notes for the sum of $250 each, together with five interest notes of the amounts of $880, $860, $840, $820, and $800, and the further indebtedness of one note for $7,000 bearing date of the 16th day of January, A. D. 1908, and four notes for the sum of $250 each, together with five interest notes thereon for $640, $620, $600, $580, and $560, respectively, and * * * all of said notes being secured by a mortgage on the property hereinafter described, to which mortgage and the description of said indebtedness thereon reference is hereby made for a more particular description of this indebtedness, and a vendor's lien is hereby reserved and retained on the hereinafter described property to secure the grantors herein in the full payment and discharge of said indebtedness by the said Eliza Kempner, or the firm of H. Kempner, Galveston, Tex." etc.

The parties, plaintiff and defendant, agreed in open court that upon the date of said deed each and every item of indebtedness specified therein was a valid and subsisting lien upon the tract of land in controversy in this suit, and that in pursuance of her agreement the said Eliza Kempner paid off and satisfied each and every one of said items of indebtedness and procured and filed releases.

This deed was filed for record in the office of the county clerk of Grimes county, Tex., on November 21, 1911, and was duly recorded.

On January 14, 1911, J. Cross Baker made, executed, and delivered to R. B. Templeman & Son Company a certain promissory note payable to the order of R. B. Templeman & Son Company for the sum of $2,550, dated January 14, 1911, with 10 per cent. interest thereon from date until paid, providing for the usual 10 per cent. attorney's fees and payable at Navasota, Tex., on the 1st day of November, 1911, which note was secured by deed of trust of even date therewith, recorded on the 18th day of January, 1911, in the deed of trust records of Grimes county, Tex., in volume S, pages 307–310, executed by J. Cross Baker and wife, Mattie C. Baker, and delivered to R. B. Templeman & Son Company, wherein H. L. Lewis was appointed trustee, on 257½ acres of land in Grimes county, the land in controversy.

Only $700 was paid on this note of January 14, 1911, at its maturity, leaving a balance due thereon of $2,056.62. This balance was included in a new note dated March 26, 1912, which was secured by new deed of trust of that date wherein the tract of land conveyed by the deed of trust of January 14, 1911, being the tract of land in controversy, was conveyed to George D. Neal, trustee, for the use of R. B. Templeman & Son Company, which deed of trust was signed and acknowledged by the said J. Cross Baker and wife, Mattie C. Baker, the parties obligated to pay the indebtedness, and filed for record and recorded in the county clerk's office of Grimes county, the county in which the land is situated.

On the 31st day of January, 1913, said J. Cross Baker and wife executed a new note to the said R. B. Templeman & Son Company, including the balance due on the original note of January 14, 1911, and which new note was secured by a new deed of trust whereby the land in controversy was again conveyed to George D. Neal, trustee for the use of R. B. Templeman & Son Company, which deed of trust was signed and acknowledged by the same parties who had signed the two prior deeds of trust, and filed for record and recorded forthwith in the same manner as the two prior deeds of trust.

On the 5th day of February, 1916, J. Cross Baker and wife executed another note to said R. B. Templeman & Son Company, which note included the balance due on the original note of January 14, 1911, which note was secured by deed of trust of even date therewith on the land in controversy, and which in terms renewed the indebtedness evidenced by the notes of 1912 and 1913, and was signed, acknowledged, and recorded.

Appellants' debt as evidenced by the note

of February 5, 1916, was proved up against the estate of J. Cross Baker, deceased, and is a judgment against said estate, which is insolvent. The balance of $2,056.62 on the original note of January 14, 1911, has never been paid. Common source of title was admitted.

At the time the $2,550 note and deed of trust in favor of Templeman & Son Company was executed they had no knowledge or notice of appellee's claim to the land in controversy.

Appellants Templemen & Son are successors to the firm of Templeman & Son Company and the owners of the balance due on the $2,550 note.

The controlling question presented by this appeal is whether the several renewals of the original indebtedness from Baker to appellants were a sufficient compliance with article 5695, Vernon's Sayles' Civil Statutes 1914, to protect appellants' claim from the bar of limitation. This suit having been instituted within less than four years after the maturity of the last note, in which Baker promised to pay the amount herein claimed by appellants, and the execution of a new deed of trust to secure its payment, if the execution and record of such note and deed of trust was a substantial compliance with the statute above cited, appellants' claim is not barred, and the judgment of the trial court should have been in their favor. The pertinent provisions of the statute are:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract, and the lien shall so continue for any succeeding or additional extension so made and recorded."

No form of renewal is prescribed by the statute; the only requirements being that the contract of extension shall be executed by the party or parties obligated to pay the debt, in the manner provided by law for the execution of conveyances, and must be duly recorded in the deed records of the county in which the land is situate. All these requirements were complied with in the contracts of extension relied on by appellants.

[1] As between Baker and appellants the lien given by the original instrument was preserved by each of the subsequent deeds of trust, and, these instruments being all properly recorded, the lien must be held valid against any supbsequent purchaser. This was

the well-settled rule prior to the adoption of the statute above quoted.

In the case of Slaughter v. Owens, 60 Tex. 670, the court, after citing Ellis v. Singletary, 45 Tex. 27, says:

"In the case last cited a transaction similar to the present, in which the original note given for the purchase money was surrendered, and a new note with additional sureties taken in place of it, was held not to waive the lien. The only material difference between that case and the present arises from the fact that both notes there recited that they were given for the land, whereas here neither contains such recital. This * * * does not change the rights of the parties so far as the reservation of the lien is concerned. The deed made by Owens to Shroyer showed on its face that the obligations given for the purchase money were secured by the vendor's lien. Slaughter had full notice of this fact, and, according to Owens' testimony, knew that the purchase money of the land had not been paid. He had all the information necessary to charge him with notice of the existence of the lien; and no knowledge or want of knowledge on his part, as to the substitution, could affect the right of the holders of the lien to retain it as a security for the new note. There is no evidence of an intention on the part of Owens to release the lien, but the proof is directly to the contrary. Under this state of facts we think the note sued on retained the vendor's lien for its payment."

[2] The note and deed of trust of 1912 constitute a renewal of the note of 1911 and a continuation of the lien securing it, under the common law and under all the decisions of this state we have been able to find, and we see no reason why, since every requirement of the statute of 1913 was met and complied with, it was not also a renewal of the note and a continuation of the lien under that statute. In each of the subsequent contracts of extension the lien created by the deed of trust of 1912 is referred to and expressly continued in force.

The evidence shows that the original note for $2,550, for the balance of which appellants are seeking in this suit to enforce their lien, was executed for advances made by appellants to Baker, and at the time this note and deed of trust were given appellee's deed was not of record, and appellants had no notice of her title or claim to the land.

[3] In these circumstances appellee is in no better position than she would have been had she purchased the land on the date on which she filed her deed for record, some six or eight months after appellants' deed of trust had been placed of record.

[4] As a subsequent purchaser charged with notice of appellants' lien by the record of their deed of trust, appellee is bound by any valid renewal and extension of the note between Baker and appellants. This was the holding of this court in the recent case of Allison Richey Co. v. Welder, 220 S. W. 392, not yet [officially] reported.

When the manifest purpose and intent of the act of the Legislature providing for the renewal and extension of vendor's and mortgage liens are considered, there can be no sound reason for holding that a contract for extension under said act, valid and sufficient as between the parties, and duly executed and recorded as required by the act, should not be valid and binding as to subsequent purchasers. If the Legislature had intended by the act to make the unreasonable requirement that, in order to extend a lien the contract of extension must recite on its face that the lien thereby created is the extension of a former lien, they would have expressed that intention in plain and unequivocal language, and not left it to mere surmise or inference.

After the record of her deed appellee took possession of the land in controversy, and her possession and cultivation thereof continued with the concurrent payment of taxes for more than five years before this suit was filed, and she insists that she was entitled to judgment in her favor on her plea of limitation.

[5, 6] The title to the land is not in issue in this suit, and appellee's limitation title cannot be set up as a defense to appellants' suit for foreclosure of their lien. Appellee's possession was taken under her deed from Baker, whose record title to the land at the time he executed the original deed of trust is not questioned. Having acquired Baker's title, and the land being subject to appellants' lien at the time she placed her deed on record and took possession, her possession was not adverse to appellants' claim of lien. As the owner of the land, she was entitled to possession, and appellants have at no time been entitled to possession. Upon these facts it is obvious that appellee's possession was not adverse to appellants' claim of lien, and could not affect their right to a foreclosure of the lien.

In the case of Rutherford v. Carr, 99 Tex. 107, 87 S. W. 817, Mr. Justice Brown uses this language:

"A fair analysis of this judgment may be thus stated: The plaintiffs have the legal title to the land, but the defendant, who cannot sustain limitation against the right to recover the land, thwarted an attack upon his void deed by pleading limitation that would be a bar to a suit which plaintiffs did not institute. The judgment cannot be sustained."

The judgment was reversed, and the cause remanded. To the same effect is the decision of the court in Hanrick v. Gurley, 93 Tex. 473, 474, 475, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, and also Texas Co-Op. Ins. Co. v. Clark et al., 212 S. W. 245.

In accordance with the views above expressed, the judgment of the court below must be reversed, and judgment here rendered in favor of appellants; and it has been so ordered.

Reversed and rendered.

## On Motion for Rehearing.

PER CURIAM. Rehearing denied.

GRAVES, J. (dissenting on motion for rehearing). Originally acquiescing with reluctance, I am no longer able to accept this court's construction in this cause of the amended act of 1913 (Acts 33d Leg. Special Session, p. 39, Regular Session, p. 250), now articles 5693 to 5695, inclusive, of Vernon's Sayles' Statutes. . I think the purpose of that act evidently, though not as plain as it might easily have been made, was to put an absolute end, at least as against the intervening rights of strangers, to powers of sale, liens, and superior titles in vendors, based on debts barred by the four-year statute of limitations, and to provide that, where the debts as such—that is, as carrying or giving rise to particular liens—are not before lapse of the necessary time to complete the bar expressly renewed by a contract in writing, duly acknowledged and recorded, the liens as incidents thereto cease to longer exist; in other words, the objective, it seems to me, was to henceforth cut off implied renewals of liens as incidents of unspecified obligations, and to require the contract of extension, at any rate as against third parties, to indicate on its face, and so go to record in the office of the clerk of the county where the land lay, just what debts it did purport to extend.

When the entire act is looked to, of which article 5695, quoted in this court's original opinion, is only a part, the purpose suggested seems clear. Article 5695 begins as follows:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged," etc.

—there being perforce of this language and in fact but two preceding articles and two kinds of debts mentioned, that is, articles 5693 and 5694 (sections 1 and 2 of the original act), and, first, debts secured by deeds of trust and mortgages; second, those given for purchase money of the land and evidenced by vendor's lien notes or recitations in the conveyances.

Now these foregoing articles in positive terms declare that the liens incident to both these particularly specified classes of debts "shall cease to exist four years after the maturity of the debt secured thereby," the only material proviso being one applicable only to the purchase-money liens, the second class mentioned, in this form: "Provided the lien reserved in such note or notes may

be extended as provided in section 5695 of this chapter."

The contract of extension of "either debt referred to in either of the foregoing articles" provided for in article 5695 clearly, if not necessarily, therefore, it seems to me, means an express one for specified indebtedness, since in every other contingency by the affirmative terms of those statutes themselves all liens arising out of either class of debts enumerated are declared to be absolutely dead as a consequence of the lapse of four years' time after their maturity dates.

Moreover, the words "extended" and "contract of extension," as used in section 3 or article 5695 appear to refer to a particular something already begun and to imply a continuation of a contract before made.

Another internal evidence that such was the object and effect of the 1913 act is this provision in section 3, now article 5695 thereof, which immediately succeeds that part of this article copied above in the majority opinion:

"The date of maturity set forth in the deed of conveyance or deed of trust or mortgage, or the recorded renewal and extension of the same, shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned."

This court, in construing that clause in Barger v. Brubaker, 187 S. W., at page 1027 of its opinion, said:

"We think it was the intention of the Legislature, in enacting said article 5695, to enable those who may deal with lands in this state to determine from the date, as shown on the face of the original instrument then under consideration, the due date of a written obligation secured by a lien on land, or to so determine from some written contract entered into between the maker and holder of such obligation, by which said due date had been extended, properly signed, acknowledged, and recorded in the deed records of the county in which said land is situated, and to provide a reliable means by which one dealing with such land may legally presume that the due date shown by such written instrument last recorded is the true date of such obligation. Such statute is a statute of limitation for the protection of those who may deal with lands in this state against undisclosed liens against the same. Such statute has no application to, nor in any manner affects, the fixing of liability of an indorser of a note or other written obligation; the latter being the question presented in the present case."

While that expression may not have been necessary to the determination of the precise question there involved, it seems to have at least put this court on record as holding the same view of this law as is herein sought to be presented.

To now hold that debts and the liens attending them, which are shown only by evidence dehors the record, not by anything appearing in the instruments themselves, to include and secure the balance due on previouly existing obligations, constitute proper renewals and extensions of such original debts and liens is, in effect, it strikes me, to ignore the act of 1913, to affirm that it wrought no change in the law, and to hark back to the old common-law rule prevailing before this legislation was first enacted in its original form in 1905. See General Laws Twenty-Ninth Legislature of 1905, pp. 334, 335.

In this connection it may be well to restate and particularize the pertinent facts here involved. Mrs. Kempner's deed to the land, although dated January 16, 1908, was not recorded until November 21, 1911. Templeman & Son's first deed of trust securing their original note, both dated January 14, 1911, the note maturing November 1st of that year, went to record ahead of her deed on January 18, 1911. Their second and third trust deeds, each securing a note of even date with it, and dated, respectively, March 26, 1912, and January 31, 1913, were duly recorded, but neither did either of these instruments, nor any of the notes they secured in terms renew or in any way refer to the former note and lien of January 14, 1911. Likewise their final note and deed of trust of February 5, 1916, neither expressly renewed nor made any mention of this first one, but in terms only renewed and extended the contracts of March 26, 1912, and January 31, 1913. In a word, no one of the three subsequent notes or deeds of trust in terms renewed the one of 1911, nor in any way indicated that any part of the debt it secured was included in any one of them, but, in so far as appeared from its face, each was a new and entirely different contract. The single circumstance then, appearing on this trial otherwise than from the recorded instruments themselves, that a balance of $2,056.62 of this original debt of January 14, 1911, was in fact included, along with other obligations, in each of the succeeding contracts, is left as the foundation for this court's conclusion that the requirements of this amended statute as to extensions were complied with.

No authorities construing the new law are cited other than the recent case of Allison-Richey Gulf Coast Home Co. v. Weider et al. (No. 7847), 220 S. W. 392, decided by this court by opinion filed March 4, 1920. But that holding cannot support the one here made for two reasons:

First, the only question determined was that Allison, the original vendee and maker of a lien note he had given his vendor for purchase money on the land, was "the party obligated to pay such indebtedness as extended" in a renewal thereof with its holder, within the meaning of the quoted clause as used in amended article 5695, and not subvendees under Allison who had agreed with

him to pay his original indebtedness to his vendor, that is, to quote a sentence from the opinion in that case:

"The proper party to make such extension agreement with the original vendor, or with those who stand in his place, is the one who contracted with him at the creation of the obligation to pay it, and when that has been done, the full requirements of this amended statute have been complied with."

Second, under the facts in that case the contract of extension made by Allison did expressly recite on its face that the debt and accompanying lien it acknowledged was the renewal of the original one he had so executed, the very thing found wholly lacking here as to the original contract of 1911, under which alone appellants claim in this suit.

The rule quoted by this court from Slaughter v. Owens, 60 Tex. 671, and to which it still clings, was the law before we had a statute fixing a definite limitation upon liens; it being held that at that time the vendor's lien existed as its incident by reason of the debt alone, so long as the debt continued to be renewed or was kept in force. This holding was reiterated in Hanrick v. Gurley, 93 Tex. 473, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, but it seems to me this very doctrine was abrogated in 1905 by the statute now under consideration when ten years was first fixed as the limitation period (Acts 29th Leg. 1905, p. 334), that being in the 1913 amendment cut down to four years (Acts 33d Leg. Sp. Sess. p. 39, and Reg. Sess. p. 250), and that at least one of the objects in view was to protect those acquiring interests in lands against undisclosed liens. And, if that was its purpose and effect, it clearly follows that Mrs. Kempner was entitled to recover. Even if her rights are held not to antedate the record of her deed on November 21, 1911, she was then only charged by the prior filing thereof on January 18, 1911, with knowledge of appellant's debt as of date January 14, 1911, and as maturing November 1, 1911, and not with knowledge that it would in the future be legally renewed within four years after its maturity date as thus shown. When it was not expressly so renewed, since Mrs. Kempner's rights intervened at all events from and after the filing of her deed in November, 1911, I think appellants' lien, in so far as she was concerned, died a statutory death four years after maturity of the debt it secured—that is, on November 1, 1915. Cason v. Chambers, 62 Tex. 305; Flewellen v. Cochran, 19 Tex. Civ. App. 499, 48 S. W. 39, writ of error denied.

I think the motion for rehearing should have been granted, and the trial court's judgment affirmed. This protest against what was done is earnestly entered.